Sidney G. Stricker, for Constable.

---

(Cuyahoga County Common Pleas.)
Rendered November 30, 1900.

THE STATE OF OHIO ex rel. Edmund G. Vail v. W. E. CRAIG, as Auditor of Cuyahoga County, and THE BOARD OF COUNTY COMMISSIONERS OF CUYAHOGA COUNTY.

The Deputy State Supervisors of Elections are not officers within the legal definition of that term, and, though their jurisdiction may be coterminous with that of the county, they are not county officers, and therefore, Sec. 2866-3, R. S. does not violate Sec. 1 of Art. 10 of the Constitution.

FORD, J.

This is a case brought by a taxpayer to restrain the auditor from issuing the necessary warrant for the payment of the deputy state supervisors appointed under section 2866-3 of the Revised Statutes of Ohio, upon the grounds, (1) that the statute is unconstitutional because it violates section 26 of article 2 which provides that all laws of a general nature shall have a uniform operation throughout the state; and (2), because it violates section 1 of article 10, which provides that the general assembly shall provide by law for the election of such township and county officers as may be necessary.

A general demurrer was interposed by the defendants.

The plaintiff contends that section 2966-3 is in violation of the constitution because the subject of elections being one of a general nature and not of uniform operation throughout the state, for the reason that cities being governed by other statutes, are limited from the operation of this statute.

This point seems to have been fairly raised and definitely settled in the case of the state ex rel. Wilmot v. Buckley, 60 Ohio St., 276. There was involved in that decision the construction of section 2966b as passed April 16, 1896. That act was declared unconstitutional because it excepted the city of Mansfield from its operation. Section 2966b passed at an earlier date was declared revived, which operates uniformly to all cities of a given classification. In that case the court say:

"There is a difference between an exception and a limitation. When a statute upon a subject of a general nature is made to extend to the whole state in one part thereof, and then in another part an attempt is made to limit its operation to territory less than the state, the limitation may be disregarded; because to give it effect would render the whole statute unconstitutional; and such construction should be given when reasonable, as will uphold the statute rather than one which would defeat it. Burt v. Rattle, 31 Ohio St., 116.

"As this section, 2926b, as passed April 16, 1896, is unconstitutional and inoperative, the repealing section of the act is also inoperative.

"This leaves section 2926b of the act of April 28, 1890, 87 O. L., 359, in full force. It is urged that that section is also unconstitutional, for the reason that in one sense it operates only in cities, and not in those parts of the state lying outside of such cities. As is shown in Nelson v. State, 52 Ohio St., 88, the act operates, in theory at least, all over the state, because wherever a city may be built up, there the act will be found to be in full force and applicable to such city.

"The validity of the section can only be maintained on the doctrine of the classification of cities, and there are some difficulties in the way of so maintaining it  But in view of the condition of the election statutes, and the necessity of more stringent means to prevent fraud and secure fair elections in cities, and the fact that for more than forty years elections in cities have been conducted differently from those in rural districts, the one employing members of the council, and the other township trustees, we are constrained to hold the act of 1890 with its classification applicable to cities, as a valid enactment.

"But while such classification when applied to cities may be thus upheld, there is no authority for the classification of counties as to elections. As to subjects of a general nature, laws must have uniform operation, and they cannot be made to operate in some counties and be excluded from others. * * *

"It therefore follows that the holding of the circuit court was right and that while the city boards of election may exercise their powers and perform their duties within the city limits, they have no jurisdiction in the territory outside of the city; and that it is the duty of the state supervisor of elections to appoint deputy state supervisors under the statute, for such territory in each county of the state containing a city, to conduct all elections under the laws applicable to such deputy state supervisors."

This holding of the supreme court, we think, disposes of the first branch of the case.

The principal contention, however, is made upon the other ground, namely, that the statute violates section 1 of article 10 of the constitution, which reads:

"The general assembly shall provide by law for the election of such county and township officers as may be necessary."

In support of this proposition, the plaintiff cites the case of the State ex rel. Armstrong v. Halliday, Auditor, 61 Ohio St., 171. This was a suit in mandamus to compel the auditor of Franklin county to draw his warrant on the treasurer of the county for the payment of certain fees claimed to be due him as Justice of the peace, made in a prosecution instituted before him by the fish and game warden of the county, against one Jacobs for a violation of section a968 of the Revised Statutes punishing certain offenses against the fish and game laws of the state. The statute construed in that case, reads as follows:

"The commissioners shall, at their annual meeting in January, or at any other time, appoint a fish and game warden in each county in the state, who shall hold his office for two years, unless sooner removed, and they shall so appoint a special warden for Lake Erie, and for Mercer county, Lewiston, Licking, Laramie and Sippo reservoirs of the state; each warden shall, before entering upon the discharge of his duties, give a bond to the state, with sureties to the satisfaction of the commissioners, in the sum of two hundred dollars, conditioned for the faithful performance of the duties of his office, which bond shall be deposited with the commissioners; and it shall be the duty of the warden, under the general direction of the commissioners, to appoint such assistants as they may require to assist them in policing the territory, both land and water, of their respective counties and territories, arresting wherever found in the state all violators of the laws of the state enacted for the protection of fish and game."

The court in that case say:

"The distinguishing characteristic of a public officer is that the incumbent, in an independent capacity, is clothed with some part of the sovereignty of the state, to be exercised in the interest of the public as required by law. The office must be of a continuous character as opposed to a temporary employment, though the time be divided into terms to be filled by election or appointment in accordance with the genius of our system of government; and a bond and an oath of office are generally, though not always, required for the faithful performance of the duties of the incumbent; and compensation is made either by salary, or fees, or both.

"Here then are all the distinguishing characteristics of a public officer as usually defined and understood. A warden, denominated a 'county warden,' is to be appointed in each county of the state; the appointment is not for a temporary purpose, the office is made continuous, though the appointment of an individual to fill it, is for a term, one, as just seen, of the usual characteristics of an office; a bond is required for the faithful performance of the duties, and these duties are of a public character—the enforcement of the laws of the state in their 'respective counties,' made for the preservation of fish and game. Moreover, by other sections of the Revised Statutes (6966-2 and 6968) a county warden acts as a constable or sheriff in prosecutions instituted by him; makes arrests, subpoenas witnesses and jurors, and has charge of the jury in its retirement; and, on conviction, conducts the defendant to the jail of the county. The commissioners of the county are required to allow him a salary, not exceeding three hundred dollars annually; and he is also entitled to certain fees, such as is allowed sheriffs and constables for similar services. These wardens are not only appointed for their respective counties, but their duties are limited to 'policing the territory' thereof. Hence their duties being of a public nature and limited to their counties, they are, in every sense, as much county officers within the sphere of their duties, as are county sheriffs; and are, therefore, elective and not appointive officers."

It is claimed by the plaintiff in the case at bar, that the state deputy supervisors possess many, or the most, of the characteristics of a public officer as indicated in the game warden case, namely, that they are officers in an independent capacity, clothed with some part of the sovereignty of the state, appointed for definite terms, taking oath of office, are required to give bond, and are paid a compensation out of the county treasury, and that the territory in which they act, being coterminous with the county, they are, therefore, county officers and being county

officers, should be elected and not appointed.

In the game warden case the decision appears to have turned upon the definition of an officer, and upon the fact that the appointment was made for each county in the state.

It is fair to presume that if the statute in that case, instead of reading "The commissioners shall appoint a fish and game warden in each county in the state," had read "The commissioners shall appoint a game warden in each two counties of the state," or "in each twenty-five townships in the state," with all the other provisions of the statute as to term of office, and duties, with the provision that the salaries should be paid one-half from the county treasury of each county or in proportion to the number of townships in the designated territory, the supreme court would have arrived at a different decision.

This is particularly true in view of the fact that the administration of the game laws seems to be especially in the control of the game commissioners who are plainly state officers and, if, instead of being designated "game wardens," they had been designated "deputy state game wardens", there would be left no room to claim that such officers could, by any strain of reasoning, be held to be county officers.

The act under which the deputy supervisors were appointed (sec. 2966-1) provides as follows:

"There is hereby created the office of state supervisor of elections, and of deputy state supervisors of elections, with the powers and duties hereafter prescribed."

It is plain from this language, that such officers lack many of the distinguishing characteristics of public officers as indicated in the game warden case. They do not act in an independent capacity. They are deputy state supervisors, which implies that they are responsible to some principal, which sheers them of the charateristics of independence.

From an examination of the election laws in this state, it seems apparent the legislature intended that the conduct of elections should belong to the state and be under the control of state officers.

Section 2966-2 provides that, "By virtue of his office the secretary of state shall be the state supervisor of elections, and in addition to the duties now imposed upon him by law, shall perform the duties of such office as defined herein."

We have, then, the secretary of state as the principal election officer, and the deputy state supervisors as subordinate officers for carrying out the agencies of the state for the conduct of elections.

The case of Warwick v. The State, 25 Ohio St., 21, throws some light upon the subject of what is an officer and what is a deputy officer.

In that case, Warwick was indicted for perjury, and convicted. The record showed that the perjury was assigned upon an affidavit by Warwick upon his application to the probate court for a marriage license. The record shows that the oath was administered to him by a woman, Ellen Stranahan, then acting as deputy clerk of said probate court, and who had been theretofore duly and legally appointed and qualified as such deputy clerk, provided a woman is capable of holding that office.

In the opinion in that case—section 533 of the Revised Statutes was under discussion, and that statute reads:

"Each judge shall have the care and custody of all files, papers, books and records belonging to the probate office, and is authorized and empowered to perform the duties of clerk of his own court; and each probate judge may appoint a deputy clerk or clerks, each of whom shall, before entering upon the duties of his appointment, take an oath of office, and when so qualified, such deputy may perform any and all the duties appertaining to the office of clerk of the court; and each deputy clerk is authorized to administer oaths in all cases in which it is necessary, in the discharge of his duties as such deputy clerk. Each probate judge may take such security from his deputy as he deems necessary to secure the faithful performance of the duties of his appointment."

In that case the court say, in the opinion:

"In the absence of a deputy clerk, the probate judge is his own clerk, and responsible for acts done or omitted as such clerk, on the same principles applicable to other ministerial officers. The provision of law authorizing him to appoint a deputy clerk plainly implies that he is his own clerk—that he is both court and clerk; for there can be no deputy where there is no principal. If this be a correct view of the law—and we do not well see how it can be doubted—then it follows that the deputy clerk of the probate court is authorized to administer oaths such as the one in question; the statute authorizing his appointment provides, that 'said deputy may do and perform any and all duties appertaining to the office of clerk of said court * * * and administer oaths in all cases in which it is necessary, in the discharge of his duties as such deputy clerk.

"The question whether Ellen Stranahan was a legal deputy clerk, depends on the construction to be given to section 4 of article 14 in the constitution. This section declares that 'no person

shall be elected or appointed to any office in this state unless he possesses the qualifications of an elector,' and Ellen Stranahan had not the qualifications of an elector, and if this was an 'office.' within the meaning of the section of the constitution, then she was not legally appointed. No one will contend that the word 'office' in this section of the constitution is to have its broadest meaning, so as to make it applicable to everything known by that designation. Surely it does not apply to officers of private corporations, or of churches, or to all the minor and subordinate officers colleges, academies, and schools, such as professors, teachers, janitors, and the like. Nor can it be applicable to all subordinate officers in military or legislative departments, to the private secretary of the governor, or numerous other subordinate officers. * * * On this principle, it seems to us, the provision should be held here to apply to the principal officer alone, the probate judge, and not his deputy. At common law the officer and his deputy fill but a single office. The acts of the deputy are in law the acts of the principal, and he is responsible for them. The deputy is appointed by the principal, can only be appointed by the principal, can be appointed by no one else, and is removable at his pleasure."

From an examination of the statute, it will be seen that the deputy clerk of the probate court possesses the most of the distinguishing characteristics of a public officer, as detailed in the game warden case; he may perform any and all of the duties appertaining to the office of the clerk of the court, that is, all the duties that the judge acting as his own clerk, may perform; and it is pertinent to note that when so acting, he "is clothed with some part of the sovereignty of the state;" he is required to take an oath of office; the judge may take such security as he deems fit, that is, the deputy may be required to give a bond; he is paid a compensation out of the county treasury—and possesses other characteristics of an officer.

It was held, however, in that case, that, being designated and described as a deputy, he could not be regarded as an officer, for there can be no deputy where there is no principal.

So in the case at bar it is fair to conclude that the legislature in designating these officers as deputy officers, intended to make them officers subordinate to the secretary of state, the principal officer in the system of laws provided for the conduct of elections in the state.

If these conclusions are correct, the deputy state supervisors are not officers within the legal definition of that term, and, though their jurisdiction may be coterminous with that of the county, they are not county officers, and that,

therefore, the statute does not violate section 1 of article 10 of the constitution.

The petition is, thererefore, dismissed.

Samuel Doerfler, for Plaintiff.

P. H. Kaiser and F. L. Taft, for Defendant.